# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GLENDA MONTERO-HERNANDEZ,**

**Plaintiff,**

-vs-                                              **Case No.  6:12-cv-1736-Orl-22KRS**

**PALISADES COLLECTION, LLC,**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration after a hearing on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT PALISADES COLLECTION LLC'S COMBINED MOTION FOR SANCTIONS PURSUANT TO 15 U.S.C. § 1692k(a)(3) AND 28 U.S.C. § 1927 (Doc. No. 35)** |
| **FILED:** | **October 31, 2013** |

## I.    BACKGROUND.

I have reviewed much of the procedural background of this case previously.  Doc. Nos. 24, 33.  I repeat that background here as it is relevant to the instant Report and Recommendation.  On November 19, 2012, Plaintiff, Glenda Montero-Hernandez, filed a complaint against Defendant, Palisades Collection, LLC, alleging that Defendant made repeated telephone calls to her in violation of the Fair Debt Collection Practices Act ("FDCPA").  Doc. No. 1.  Plaintiff alleged that Defendant called her on her cellular telephone and that, after learning she was in the hospital, Defendant called her through the hospital's switchboard, resulting in Plaintiff receiving calls from

Defendant on the telephone in her hospital room. *Id.* ¶¶ 12-13.  Plaintiff alleged that Defendant

continued making these calls after learning that she was in the hospital being treated for a serious

medical condition. *Id.* ¶¶ 15-18.  Plaintiff also alleged that Defendant called her over 200 times

after she was discharged from the hospital. *Id.* ¶ 20.

    As recounted in detail elsewhere, Defendant's efforts to verify Plaintiff's allegations did

not go smoothly.  Plaintiff failed to timely respond to discovery requests that would have enabled

Defendant to verify Plaintiff's claims about the telephone calls and to the Court's Orders requiring

her to produce the information.  Plaintiff and her counsel also failed to respond to multiple Court

Orders.  Ultimately, Plaintiff's case was dismissed with prejudice based on her failure to

comply with the Court's Order requiring her to respond to Defendant's discovery requests.  Doc.

Nos. 33-34.  In dismissing the case, the Court also retained jurisdiction to address any motions for

attorney's fees and costs, giving Defendant until October 31, 2013 to file a bill of costs and a

motion for attorney's fees or other appropriate relief.  Doc. No. 34.

    On October 31, 2013, Defendant filed a motion for sanctions, requesting an award of

attorney's fees against Plaintiff personally pursuant to 15 U.S.C. § 1692k(a)(3) and against

Plaintiff's counsel of record pursuant to 28 U.S.C. § 1927.  Doc. No. 35.  In support of the motion,

Defendant filed:

- An affidavit from its counsel of record, Ronald S. Canter, with attachments including time sheets showing time expended on the case by Attorney Canter and his legal assistant; copies of Defendant's interrogatories, requests for production of documents, and requests for admission to Plaintiff; Plaintiff's responses to Defendant's requests for admission; Plaintiff's answers to Defendant's interrogatories; and Plaintiff's responses to Defendant's requests for production of documents, Doc. Nos. 35-1 through 35-5; and

- An affidavit from Attorney James Bedell with attached time sheet, Doc. No. 35-6.

Plaintiff's counsel of record (Attorneys Joseph K. Birch and Richard R. Baker) responded to the motion on their own behalf and on behalf of Plaintiff.  Doc. No. 39.  In the response, Plaintiff and her counsel requested a hearing on the motion for sanctions.  *Id.*

The Court conducted an evidentiary hearing on Defendant's motion for sanctions on December 10, 2013.  Doc. No. 47: Transcript of Dec. 10, 2013 hearing (hereinafter cited as "Tr.").  Defendant, through Attorney Canter, presented documentary evidence.  Doc. No. 46.  Plaintiff, Attorney Birch, and Attorney Baker testified on their own behalf.

Defendant's motion has been referred to me for issuance of a Report and Recommendation.

## II.    RELEVANT FACTS.[1]

Attorneys Baker and Birch are solo practitioners with their own separate practices.  Tr. 4-6.  In early 2012, Plaintiff approached Attorney Baker requesting help with a potential bankruptcy filing.  *Id.* at 21-22.  Attorney Baker had previously assisted Plaintiff with another legal matter.  *Id.*  When he met with Plaintiff in early 2012, Plaintiff told Attorney Baker that she had recently been hospitalized for various health problems and that, while she was hospitalized, she was constantly called by Defendant on her cellular telephone attempting to collect debts.  *Id.* at 22-23.  Plaintiff also told Attorney Baker that her personal caregiver answered some of the calls and informed Defendant that Plaintiff was hospitalized and where she was hospitalized.  *Id.* at 23.  Plaintiff told Attorney Baker that, after her caretaker informed Defendant that Plaintiff was hospitalized and asked Defendant not to call Plaintiff, Defendant called the hospital and was able

---

[1]As noted by the citations, these facts are drawn from the evidentiary hearing and other undisputed evidence in the record.

to have its collection calls put through to Plaintiff's hospital room.  *Id.*  Attorney Baker believed

Plaintiff.  *Id.*  He found her credible because she was in tears during the conversation.  *Id.*

In this same time frame, Attorneys Baker and Birch decided to create a law firm – Baker &

Birch, PLLC – to litigate consumer protection cases.  Tr. 9, 24.  Plaintiff's lawsuit was the first

(and, as it turned out, only) such case they filed.  *Id.*  Attorney Baker conducted the initial

investigation and drafted the complaint in Plaintiff's lawsuit.  *Id.*  After the filing of the complaint,

Attorney Baker's involvement was minimal.  *Id.*  Although Attorney Baker remained counsel of

record, Attorney Birch testified that he handled the the case after the complaint was filed.  *Id.* at 9.

Except for preparing and signing the initial disclosures (Doc. No. 46-2: Ex. 9; Tr. 28), the

evidence shows that Attorney Baker had little to no involvement with the litigation of Plaintiff's

case following the filing of the complaint.[2]   Attorney Birch testified that he believed and

continues to believe Plaintiff's allegations and that none of his actions or inactions in this case

were meant to prejudice Defendant or delay the proceedings in any way.  Tr. 8, 12.

On January 23 and April 8, 2013 (before Defendant had served Plaintiff with discovery

requests), Defendant's counsel informed Plaintiff's counsel that Defendant's records showed that

it had never spoken with Plaintiff, it had never attempted to contact her on a cellular telephone or

at a hospital, and the only telephone number Defendant had for Plaintiff was a landline.  Doc. No.

46: Exs. 1-2.  Defendant's counsel also asked Plaintiff's counsel to disclose the telephone numbers

---

[2]Plaintiff's responses to Defendant's requests for admission bear a typed signature for "Richard A. Baker." Doc. No. 46-1: Ex. 5.  Both Attorneys Baker and Birch testified that the appearance of Attorney Baker's typed signature on this document was a typographical error and that Attorney Birch actually prepared the responses to the requests for admission.  Tr. 9, 28.  I credit this testimony.

at which Plaintiff alleged she was called during the timeframe relevant to this lawsuit.  *Id.*

Plaintiff's counsel did not respond to these inquiries.  Tr. 15-16, 27.

Defendant served Plaintiff with requests for admissions, interrogatories, and requests for

production of documents on April 24, 2013.  Doc. No. 46-1: Ex. 4.  Those discovery requests

included inquiries that would have allowed Defendant to verify Plaintiff's allegations about the

telephone calls she had received from Plaintiff.  *Id.*  Plaintiff did not timely respond to the

requests, and she also did not respond after Defendant granted Plaintiff an informal extension until

June 14, 2013, to serve the responses.  Doc. No. 24 at 1-2.

Plaintiff suffers from various serious medical conditions.  Tr. 40.  In May 2013 (when her

discovery responses would initially have been due), she suffered a relapse of some of those

conditions and was hospitalized.  *Id.* at 41.  Attorney Birch was able to serve completed responses

to Defendant's requests for admissions on June 14, 2013, but he did not serve responses to

Defendant's interrogatories or requests for production of documents.  *Id.* at 8.  Attorney Birch

testified that he was unable to serve those responses or file a motion for extension of time because

he was incapacitated for approximately two weeks by a medical condition.  *Id.*

After Plaintiff failed to serve responses to Defendant's interrogatories and requests for

production of documents by the extended June 14 deadline, Defendant filed a motion for

sanctions.  Doc. No. 14.  Plaintiff did not respond to the motion, and the Court granted it on July

9, 2013.  Doc. No. 15.  In so ruling, the Court ordered Plaintiff to provide responses to the

interrogatories and requests for production of documents by July 12, 2013.  *Id.*  Plaintiff did not

provide the discovery responses as required.  Doc. No. 24 at 1-2.  Defendant then filed a motion to

dismiss based on this failure to comply with a Court Order and a motion for attorney's fees

incurred in connection with the motion for sanctions.  Doc. Nos. 16-17.  Plaintiff did not timely respond to the motions, but the Court set them for a hearing, requiring Plaintiff and her counsel to appear in person.  Doc. No. 21.

On the evening of August 20, 2013 (the evening before the scheduled hearing), Plaintiff's counsel finally served Defendant's counsel with responses to Defendant's interrogatories and requests for production of documents.  Doc. No. 46-2: Exs. 6-7; Doc. No. 24 at 2-3.  Her discovery responses showed that she had not personally performed any investigation prior to the filing of the complaint, that she personally was not currently in possession of any documents showing the calls made to her during the timeframe at issue in this lawsuit, she did not know the telephone numbers at which Defendant had called her, and did not have much detail about the telephone conversations at issue in this lawsuit.[3]  Doc. No. 46-2: Exs. 6-7.  The responses were also rather vague about the telephone numbers and service providers she had used in the last four (4) years.  Doc. No. 46-2: Ex. 6 ¶ 17.

Plaintiff and Attorney Birch appeared in person for the hearing on August 21, 2013.  During that hearing, Attorney Birch provided various explanations for Plaintiff's failure to respond to Defendant's discovery requests and to comply with the Court's Order and urged the Court not to impose the sanction of dismissal.  Doc. No. 24 at 1-3.  Rather than recommend dismissal, the Court imposed a lesser sanction in accordance with Fed. R. Civ. P. 37(b)(2).

---

[3]At the evidentiary hearing, Plaintiff testified in detail about telephone calls she received from Defendant. Tr. 42-44, 56-60.  When asked about her lack of records showing these calls, Plaintiff made it clear that she was relying on her attorneys to gather those records.  *Id.* at 60-62, 66-67, 70.  I credit this testimony and conclude that, when Plaintiff stated in her discovery responses that she did not have any records showing the telephone calls at issue in this lawsuit, she did not mean that such records do not exist but that she did not personally have possession of any such records at the time of the discovery responses.

Among other things, the Court required: (1) Plaintiff to obtain from her telephone service providers (both landline and cellular) records showing calls made to and from the telephone numbers she had utilized in the last four (4) years and produce those records to Defendant on or before September 13, 2013; and (2) Plaintiff's counsel to file a notice certifying Plaintiff's compliance with the Order on or before September 13, 2013.[4]  Plaintiff's counsel did not file a notice certifying Plaintiff's compliance with the Order.  Plaintiff also did not produce the telephone records as required by the Order.  Doc. No. 33 at 5.[5]

After learning of Plaintiff's failure to produce the required telephone records, the Court gave Plaintiff one last chance to cure the prejudice caused by her failure to produce her telephone records as required - extending the deadline to September 20, 2013.  Doc. No. 31.  If Plaintiff did not produce the required records, the Court required Plaintiff's counsel to appear in person for a hearing on September 24, 2013, and show cause why Plaintiff's claims should not be dismissed. *Id.*  Plaintiff did not produce the records as required, and Plaintiff's counsel did not appear at the September 24, 2013 hearing.  Doc. No. 32.  Although CM/ECF records show that the hearing notice was sent to counsel of record, Attorney Birch testified that he did not receive the notice and did not know about the hearing until after it had occurred.  Tr. 8.  Defendant's counsel appeared at the hearing and asked that the Court dismiss Plaintiff's claims with prejudice and that Defendant be allowed to file a motion for attorney's fees following entry of a judgment.  As stated above, the

---

[4]By separate Order issued the same day, the Court also ordered Plaintiff to pay Defendant $1,855.00 in attorney's fees incurred in connection with Defendant's successful discovery motion.  Doc. No. 25.

[5]At the hearing on the instant motion, Attorney Birch testified that the Court's Order requiring Plaintiff to pay Defendant $1,855.00 in fees affected her decision not to go forward with obtaining the telephone records.  Tr. 35-36.

Court ultimately dismissed Plaintiff's claims with prejudice based on her failure to comply with a pre-trial Court Order.  Doc. No. 34.

At the evidentiary hearing on Defendant's current motion, Plaintiff testified and offered more detail about the factual allegations underlying this lawsuit.  Plaintiff testified that, in the time period covered by this lawsuit, she had both landline and cellular telephone numbers.  She testified that she received telephone calls from Defendant on both her landline and her cellular telephones.  Tr. 56.  She testified that she was hospitalized in November 2011.  Tr. 46-47 (referring to Doc. No. 46-2: Ex. 6 ¶ 1).  She testified that, in this time period, her personal caretaker forwarded telephone calls from her landline number to her cellular number, resulting in the possibility that calls she answered from Defendant on her cellular telephone were originally placed to her landline telephone number.  *Id*. at 42-43, 56-57.   Plaintiff testified that, while she was in the hospital, she took calls from Defendant on her cellular telephone, told Defendant's representatives that she was hospitalized, and asked them to stop calling.  *Id*. at 43-44, 57.  She also testified that her caregiver answered calls from Defendant on her cellular telephone and told Defendant the name of the facility at which she was hospitalized.  *Id*. at 43, 57.  She testified that, after these interactions, she received additional telephone calls from individuals identifying themselves as representatives of Defendant.  *Id*. at 44, 57.  She also testified that she had a hospital telephone in her hospital room and that she received calls from Defendant on that telephone.  *Id.* at 57.  Plaintiff testified that she did not institute this suit to harass Defendant, but rather to stop Defendant from harassing her.  *Id.* at 49.

### III.      ANALYSIS.

Defendant seeks sanctions against Plaintiff personally pursuant to 15 U.S.C. § 1692k(a)(3) and against Plaintiff's counsel of record pursuant to 28 U.S.C. § 1927.  I discuss each of these statutes separately, below.

> A.      *Sanctions Against Plaintiff Pursuant to 15 U.S.C. § 1629k(a)(3).*

Defendant argues that it is entitled to an award of attorney's fees against Plaintiff personally pursuant to 15 U.S.C. § 1629k(a)(3).  In its motion, Defendant argued that Plaintiff's claims against Defendant were factually baseless from the outset and objectively insufficient to commence a lawsuit.  Doc. No. 35.  At the hearing, Defendant's counsel also argued that the delay in providing it with information about the nature of Plaintiff's claims (namely, that she may have received calls from Defendant that were forwarded from her landline to her cellular telephone) was sanctionable.  Tr. 72-73, 77-78.

Section 1629k(a)(3) provides that, "on a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purposes of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  The Eleventh Circuit has not interpreted the meaning of "in bad faith and for the purposes of harassment" with respect to § 1629k(a)(3).  Other courts have set a high bar, requiring evidence that a plaintiff both knew that his or her claim was meritless and pursued it with the purpose of harassing the defendant.  *See, e.g.*, *Conner v. BCC Fin. Mgt. Servs., Inc.*, 597 F. Supp. 2d 1299, 1309 (S.D. Fla. 2008) (citing *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F. Supp. 2d 133, 141 (E.D.N.Y. 2006), *aff'd in part, rev'd in part by* 516 F.3d 85 (2d Cir. 2008)).  With respect to the bad faith prong, in other contexts, the Eleventh Circuit has found that bad faith requires more than mere negligence

and that a finding of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.  *See, e.g.*, *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225-26 (11th Cir. 2003) (citations omitted).

Based on the evidence presented at the evidentiary hearing, I am unable to find that Plaintiff brought this lawsuit in bad faith and for the purposes of harassment.  Plaintiff testified that, during her November 2011 hospitalization, her personal caregiver forwarded calls from her landline telephone to her cellular telephone.  As noted above, this raises the possibility that some of the calls Plaintiff claims to have received from Defendant in this time period may have been made to her landline telephone number, but answered on her cellular telephone.  Plaintiff also testified (without contradiction[6]) that she and/or her caregiver told Defendant that she was in the hospital and asked Defendant to stop calling her.  She also testified (without contradiction) that, after making this request, Defendant continued to call her.

---

[6]While Defendant has disputed that any of its representatives ever spoke to Plaintiff or any third parties about Plaintiff's account, it has offered no admissible evidence to support this assertion.  At the evidentiary hearing, Defendant attempted to introduce an exhibit consisting of an affidavit of records custodian and documents identified as a partial copy of Defendant's notes relating to Plaintiff's account.  The account notes purported to show multiple telephone calls to Plaintiff's landline telephone number (including multiple calls during November 2011, the time when Plaintiff testified she was in the hospital and receiving calls from Defendant).  The affidavit stated that, according to Defendant's records, Defendant had not spoken to Plaintiff or any third party regarding her account.  This exhibit was not admitted into evidence because it was not timely disclosed in accordance with the requirements of the Court's Order and Notice of Hearing of November 20, 2013 (Doc. No. 41).  *See* Tr. 53-55.  Moreover, even if it had not been excluded for that reason, it is not clear that the account records attached to the affidavit of records custodian support the averrals in that affidavit (for example, the account records do not reference any conversations with Plaintiff or third parties, but they also repeatedly say "SEE NOTES"; no notes are attached, and the affidavit of records custodian does not explain the designation).  In addition, during the hearing, Defendant's counsel suggested that the Court could consider an email from Defendant's attorney stating that Defendant told him it had never spoken to Plaintiff (Doc. No. 46-1: Ex. 1) as evidence that Defendant had not, in fact, ever spoken to Plaintiff.  *See* Tr. 73.  An email from Defendant's counsel asserting what Defendant had told him about the contents of its records is not competent evidence on this point.

Defendant has never disputed that it called Plaintiff at her landline telephone number, and Defendant's counsel admitted at the evidentiary hearing that failing to honor a verbal request to stop calling a debtor could leave a debt collector open to a claim of harassment.  Tr. 85.  While Plaintiff's discovery responses made it clear that she was not personally in possession of documentation to verify her claims and was sketchy on the details of the calls that form the basis of her lawsuit, this does not mean that Plaintiff's lawsuit had no basis in fact, that the allegations in her complaint are untrue, or that her case was frivolous, as would be required to support a finding of bad faith.

Likewise, there is no evidence that would support a finding that Plaintiff commenced or litigated this lawsuit for purposes of harassment.[7]  To the contrary, at the hearing, Plaintiff testified that she received multiple calls from Defendant, even after she or her caregiver had asked Defendant to stop calling and that she felt harassed by the calls.  While Plaintiff did not recall many details about the calls, she was still visibly upset by them.  In addition, Defendant offered no admissible evidence contradicting Plaintiff's version of events.[8]  On these facts, I cannot conclude that Plaintiff commenced or pursued this lawsuit for purposes of harassment.

Defendant cites no binding authority from the Eleventh Circuit interpreting § 1629k(a)(3).  Moreover, none of the cases it cites persuade me that a different result should be reached in this

---

[7]For instance, there is no evidence that Plaintiff (as opposed to her counsel) was responsible for the delay in providing Defendant with information about her claims or that the delay derived from an intent to harass Defendant. To the extent that Plaintiff was partially responsible for that delay, I note that Plaintiff has already been sanctioned severely in that the Court ordered her to pay Defendant $1,855.00 in attorney's fees and dismissed her lawsuit with prejudice.

[8]As noted above, Defendant's proffered exhibit regarding the contents of its business records was excluded because it was not timely disclosed, and Defendant's counsel's email relaying Defendant's statement that it had not spoken to Plaintiff or any third parties is not competent evidence on this point.

case.  *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla. 2010), and *Rhinehart v. CBE Gr, Inc.*, Case No. 3:09-cv-311-J-25MCR at Doc. No. 47 (M.D. Fla. May 27, 2010), both involved situations where the plaintiffs' deposition testimony contradicted most of the allegations in their complaints and the court concluded that the plaintiffs' attorneys had merely produced boilerplate complaints, which the plaintiffs had verified despite the inclusion of spurious claims and erroneous assertions of fact.  *Black v. Equinox Financial Management Solutions, Inc.*, 444 F. Supp. 2d 1271 (N.D. Ga. 2006), involved a complaint that was filed "based on little more than a hunch" and was not dismissed even when discovery failed to turn up evidence that would substantiate the hunch.  In *Smith v. Argent Mortgage Co.*, 331 F. App'x 549 (10th Cir. 2009), the *pro se* plaintiffs brought their case to trial but presented absolutely no evidence to support their FDCPA claims, and the record contained strong indications that plaintiffs' purpose in filing the lawsuit was to delay foreclosure and other collection activities, not to obtain a favorable judgment. The record in this case contains no facts comparable to the facts in those cases.

In addition, *Grismore v. Kenneth Eisen & Associates, Ltd.*, 348 F. App'x 292 (9th Cir. 2009), merely affirmed a district court's award of fees under § 1629k(a)(3) and provided no facts that would serve as a useful comparison.  Finally, *Conner v. BCC Financial Management Solutions, Inc.*, 597 F. Supp. 2d 1299 (S.D. Fla. 2008), actually supports my conclusion here in that the district court adopted the magistrate judge's report and recommendation finding that fees should not be awarded under § 1629k(a)(3) because there was no evidence that plaintiff personally litigated the case in bad faith or for purposes of harassment.  *Conner*, 597 F. Sup. 2d at 1302 n. 1, 1309 (citations omitted) ("[T]here must be evidence that Plaintiff both knew that his/her claim was meritless and pursued it with the purpose of harassing the defendant . . . . [T]here is simply no

evidence that Plaintiff personally knew of the lack of merit and that she continued litigating for the purpose of harassment.").

Accordingly, I recommend that the Court deny Defendant's motion for fees against Plaintiff personally pursuant to § 1629k(a)(3).

      B.    *Sanctions Against Plaintiff's Counsel Pursuant to 28 U.S.C. § 1927.*

Defendant also argues that it is entitled to an award of attorney's fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927. As with its argument in support of sanctions against Plaintiff personally, Defendant argued in its motion that Plaintiff's counsel knew or should have known that Plaintiff's claims were baseless from the start and that they continued to litigate the case even after they learned that her claims lacked evidentiary support. Doc. No. 35. At the hearing, Defendant's counsel also argued that the delay in providing information about the nature of Plaintiff's claim was sanctionable. Tr. 72-73, 77-78.

Section 1927 provides, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess cost, expenses, and attorneys' fees reasonably incurred because of such conduct." In order to impose sanctions under § 1927, the Court must find that counsel engaged in unreasonable and vexatious conduct that multiplied the proceedings and that the attorney's conduct was so egregious that it was tantamount to bad faith. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2006) (citations omitted). "Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be 'unreasonabl[e] and vexatious[ ]' if it is done with a malicious purpose or intent." *Id.* at 1241.

"[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions – the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Id.* "[N]egligent conduct, standing alone, will not support a finding of bad faith under § 1927 – that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney." *Id.* at 1241-42.

Because Plaintiff was represented by two attorneys of record, I analyze their conduct separately, below.

> 1.    Attorney Baker.

The testimony at the hearing established that Attorney Baker's involvement in the case was essentially limited to filing Plaintiff's Complaint, after which he turned the case over to Attorney Birch for the remainder of the litigation.[9]  The language of § 1927, however, "makes clear that it only applies to unnecessary filings after the lawsuit has begun" and that it does not apply to initial pleadings.  *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006) (citations omitted) (unpublished opinion cited as persuasive authority); *see also Velez v. Levy World Ltd. P'ship*, Case No. 6:03-cv-878-Orl-22DAB, 2007 WL 842768, at *4 (M.D. Fla. March 20, 2007) (citing *Macort*).  Accordingly, there is no basis to sanction Attorney Baker under § 1927, and I recommend that the Court deny Defendant's motion for sanctions against him.

---

[9]Attorney Baker did testify that he signed Plaintiff's Initial Disclosures. Tr. 28.  Complying with the requirement to serve Initial Disclosures can hardly be said to have "multiplied the proceedings," let alone vexatiously, and Defendant does not argue that this action was worthy of sanction.  *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (conduct must actually multiply the proceedings to be sanctionable under § 1927).

2.      Attorney Birch.

In its motion, Defendant argued that Plaintiff's counsel should be sanctioned because Plaintiff's claims were frivolous and her counsel pursued those claims despite knowledge that they were frivolous.  Doc. No. 35.  The record does not establish that Attorney Birch knowingly or recklessly pursued frivolous claims against Defendant.  As explained above, at the hearing, Plaintiff testified that her caregiver forwarded calls from her landline telephone number to her cellular telephone number.  She also testified that she and her caregiver asked Defendant to stop calling but that Defendant continued to do so.  Defendant has never denied calling Plaintiff's landline number and, by the admission of Defendant's counsel, if a debt collector continued calling a debtor after being verbally told to stop, the debt collector could leave itself open to a charge of harassment.  While Defendant has contended (without submitting admissible supporting evidence)[10] that its records show that its representatives never spoke to Plaintiff, Plaintiff testified to the contrary, and – if this case had gone to trial – a jury might have credited Plaintiff's testimony.  In sum, I cannot conclude that Plaintiff's claims were frivolous, as I would be required to conclude that Attorney Birch had knowingly or recklessly pursued frivolous claims.

At the hearing, Defendant's counsel also argued that the nature of Plaintiff's claims should have been revealed months previously and that the delay could be sanctioned under § 1927.  Tr. 72-73, 77-78.  The record does not, however, establish that Attorney Birch has needlessly obstructed the litigation of a non-frivolous claim.  As the Court has previously noted, Attorney Birch's conduct of this litigation may not have lived up to the Court's expectations.  Upon

_____

[10]As stated above, Defendant's exhibit concerning the contents of its business records was not admitted into evidence because it was not timely disclosed, and the email from Defendant's counsel stating that Defendant told him that it had not spoken with Plaintiff is not competent evidence on this point.

consideration of all the evidence of record, however, I conclude that the litigation of this case went awry through neglect, lack of communication with Plaintiff, and circumstance (including the illnesses of Plaintiff and Attorney Birch) – not because Attorney Birch was engaging in needless obstruction, as would be required to impose sanctions. *See Amlong*, 500 F.3d at 1241. While it might have been preferable to determine the facts underlying Plaintiff's claim earlier in this litigation, on the facts of this case, I cannot say that the failure to do so amounted to vexatiously multiplying the proceedings.

At the hearing, Defendant's counsel gave only two examples of conduct that Defendant contended amounted to bad faith: service of discovery requests and contacting Defendant's counsel about a mediation date, both of which occurred after the Court had ordered Plaintiff to obtain her telephone records. Tr. 76-77. Defendant argued that, by the time these actions occurred, Plaintiff's counsel was merely "churning" litigation. *Id.* at 77. These two actions do not, however, support an award of sanctions. First, conduct that does not, in fact, multiply the proceedings is not sanctionable, no matter how unreasonable or vexations. *Peterson*, 124 F.3d at 1396. Defendant's counsel admitted that Defendant did not respond to Plaintiff's discovery requests. Tr. 76. Therefore, the service of those requests did not multiply the litigation. Second, as discussed at the hearing and as is evidenced from the docket in this case, Attorney Birch contacted Defendant's counsel to pick a mediation date only after being ordered to file a notice of mediation conference, upon threat of sanctions. Doc. No. 26; *see also* Tr. 18. On the facts of this case, contacting Defendant's counsel in order to avoid being sanctioned by the Court does not arise to the level of bad faith required to support a sanction.

Accordingly, I recommend that the Court deny Defendant's motion to sanction Attorney Birch.

## IV.    RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Defendant's Combined Motion for Sanctions Pursuant to 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927 (Doc. No. 35).

With its motion, Defendant requested that the Court award it essentially all of the fees it incurred in litigating this case.  In their response brief and at the hearing, Plaintiff's counsel argued that an order awarding Defendant all of the fees it incurred would be inappropriate because the amount of § 1927 sanctions must bear a financial nexus to the excess proceedings.  *See Peterson*, 124 F.3d at 1396 ("Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'") (citing § 1927).  This point is well taken, but neither party has had the opportunity to brief the issue of how much of Defendant's claimed fees are appropriately attributed to any sanctionable conduct.  Accordingly, it would be premature to make a recommendation about the amount of sanction to be levied if the Court declines to adopt this Report and Recommendation.  I therefore **FURTHER RECOMMEND** that, if the Court declines to adopt this Report and Recommendation and instead determines that

-17-

sanctions are warranted, it allow the parties to submit briefs and evidence addressing the amount

of sanction to be levied within a time to be allowed by the Court.

Failure to file written objections to the proposed findings and recommendations contained

in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 23, 2014.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy